UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 08-CV-0316 (JFB)

———————————

DOUGLAS D. MARTIN,

Petitioner,

VERSUS

WILLIAM D. BROWN,

Respondent.

———————————

**MEMORANDUM AND ORDER**
April 29, 2010

———————————

JOSEPH F. BIANCO, District Judge:

Douglas D. Martin (hereinafter "Martin" or "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the County Court of Nassau County, State of New York. Petitioner was convicted following a jury trial of two counts of kidnapping in the second degree, two counts of sodomy in the first degree, and one count of rape in the first degree. Petitioner was sentenced to an aggregate term of fifteen years' imprisonment.

In the instant habeas petition, petitioner challenges his conviction on the following grounds: (1) the jury's verdict was against the weight of the evidence; (2) petitioner was denied a fair trial, due process, and his constitutional and statutory rights to present a defense because the trial court declined to admit certain medical evidence regarding an alleged physical disability; and (3) petitioner was denied a fair trial and due process as a result of improper comments by the prosecutor during summation.

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

A. The Evidence at Trial

The following facts are adduced from the underlying record.

1. May 21, 2000 Incident

At about 11:40 p.m. on May 21, 2000,

W.H.[1] walked to a public pay phone in order to call her boyfriend. (Trial Transcript ("T.") 305.) As she inserted a quarter, the attacker hung up a phone he was using, approached her, and grabbed her by the hair with his left hand. (*Id.* at 307-10.) W.H. was forced into a small, brown car with a baby's car seat on the passenger side of the back seat. (*Id.* at 311-12.) The attacker drove to a corner of a "very dark area," after threatening to shoot W.H. if she continued to scream. (*Id.* at 312-15.) After parking the vehicle, the attacker orally sodomized W.H. (*Id.* at 316-21.)

The attacker then dropped off W.H. at a corner approximately where he had been parked initially. (*Id.* at 312.) W.H. ran to the payphones and called her boyfriend and then the police. (*Id.* at 325-26.) After two patrol cars arrived, W.H. told the officers that she believed her attacker stood around six-feet-one-inch tall and weighed about 180 pounds. (*Id.* at 340-49.) At trial, W.H. described her attacker as being a tall, black man with "a belly," dressed in black pants and a long jacket over a white shirt. (*Id.* at 307-08.) None of the petitioner's DNA was detected on W.H.'s clothing. (*Id.* at 407-15.) However, police did find petitioner's fingerprint on the public payphone. (*Id.* at 240-46, 523-24.) At trial, W.H. identified petitioner as her attacker. (*Id.* at 369.)

2. June 20, 2000 Incident

On June 20, 2000, between noon and 12:30 p.m., M.M. walked to a bus stop on Nassau Turnpike with her friend, Juana Torres (hereinafter "Torres"). (*Id.* at 683-85.) M.M. and Torres testified that a man in a reddish sedan with a child seat in the rear passenger side drove to the stop. (*Id.* at 682, 823-24.) M.M. described her attacker as a big, tall, black man with a shaved head. (*Id.* at 700.) The attacker was wearing a Yankees jersey. (*Id.* at 693.) He claimed to be a "gypsy cab" and offered the women a ride to Roosevelt Field Mall. (*Id.* at 686-87.) The women accepted this offer and as M.M. climbed into the passenger seat, the attacker locked the car doors and sped off, leaving Torres behind. (*Id.* at 686-88.) M.M. struggled to escape and Torres heard her screaming. (*Id.* at 764-65, 853.) Torres immediately called the police. (*Id.* at 688.)

M.M. recalled that the vehicle had four doors and a plate on the dashboard, which read "Sundance." (*Id.* at 699.) The attacker drove to the corner of a school parking lot. (*Id.* at 691-92.) The attacker then orally sodomized M.M. in the car. (*Id.* at 694-95.) Afterward, the attacker told M.M. that he had a gun and that if M.M. did not stop asking why he was doing this, he would kill her. (*Id.* at 695, 756, 759.) The attacker then quickly walked around the front of the car before M.M. could get out. (*Id.* at 695-96.) The attacker forcibly raped M.M., but stopped when she informed him that she was pregnant. (*Id.* at 695-98.) The attacker apologized, allowed her to dress, and dropped her off at Washington Place. (*Id.* at 698-99.) Although M.M. did not identify petitioner as her attacker at trial (*see* Respondent's Br. at 7 n.6), DNA tests confirmed that petitioner had engaged in sexual intercourse with M.M. (*Id.* at 1024-29.) Both M.M. and Torres later identified petitioner's vehicle as the car used in the attack. (*Id.* at 720-26, 838-40.) At trial, M.M. also identified petitioner's Yankees jersey as the one worn by her attacker. (*Id.* at 735, 739.)

---

[1] For purposes of confidentiality, the Court refers to the victims by their initials.

Petitioner was arrested on the evening of June 20, 2000. After being arrested, petitioner stated that the June 20, 2000 sexual encounter with M.M. was consensual, but he also added: "I want to say I'm sorry and I need counseling." (*Id.* at 628.)

### 3. Petitioner's Case

With respect to the May 21, 2000 incident, petitioner presented evidence that he played basketball early on May 21, 2000 near the payphones at issue and that he used one of the phones at some point. (*Id.* at 1190, 1195.) However, he testified that he was home during W.H.'s abduction. (*Id.* at 1190-91, 1200.)

With respect to the June 20, 2000 incident, petitioner testified that M.M. was a prostitute and that the sexual intercourse on June 20, 2000 was consensual. (*Id.* at 1209, 1215-26.) Petitioner testified that he had also had consensual sex with M.M. a month earlier. (*Id.* at 1212-15.) Petitioner also testified that he had pins in his hip from a surgery in 1989, which caused him to move slowly. (*Id.* at 1226-27.) Thus, petitioner argued that he did not move quickly enough to prevent M.M. from escaping, as she described. (*See, e.g.*, *id.* at 1433-34.) Petitioner, his fiancee, and his friend all testified regarding petitioner's hip condition. (*Id.* at 1077, 1116-20.) Petitioner also showed his surgical scars to the jury, but petitioner was not allowed to call a doctor to testify about his hip condition. (*Id.* at 1226-34.)

### B. Procedural History

Following a jury trial, petitioner was convicted of two counts of kidnapping in the second degree, N.Y. Penal Law § 135.20; two counts of sodomy in the first degree, N.Y. Penal Law § 130.50[1]; and one count of rape in the first degree, N.Y. Penal Law § 130.35[1]. (*See* T. 1543-44.) On May 1, 2002, petitioner was sentenced to concurrent, determinate sentences of seven years for each of the first kidnapping and sodomy charges, to run consecutively to concurrent, determinate sentences of eight years for the second kidnapping and sodomy charges as well as the rape charge. Petitioner was also sentenced to a five-year period of post-release supervision and was required to pay a $200 surcharge, to pay a $10 crime victims' fee, and to undergo HIV testing.

Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department, arguing that: (1) the jury's verdict was against the weight of the evidence; (2) petitioner was denied a fair trial, due process, and his constitutional and statutory rights to present a defense because the trial court declined to admit medical evidence regarding his alleged physical disability; and (3) petitioner was denied a fair trial and due process as a result of prosecutorial misconduct during summation. In a decision and order dated March 21, 2006, the Appellate Division affirmed petitioner's conviction, holding that (1) the jury's verdict was not against the weight of the evidence; (2) petitioner's claim regarding the admission of medical testimony was unpreserved for appellate review and was, in any event, without merit; and (3) petitioner's claim of prosecutorial misconduct was also unpreserved for appellate review and, in any event, the prosecutor's statements "were within the broad scope of permissible rhetoric in summation, and were a fair response to defense counsel's summation . . . ." *People v. Martin*, 815 N.Y.S.2d 105, 105 (App. Div. 2006).

Petitioner then filed an application with

3

the New York Court of Appeals for leave to appeal the Appellate Division's order. His application raised the same claims as those raised before the Appellate Division, but conceded that the Court of Appeals lacked jurisdiction to hear a weight of the evidence claim. On July 31, 2006, petitioner's application was denied. *People v. Martin*, 7 N.Y.3d 791 (2006).

On June 21, 2007, petitioner filed a *pro se* application for a writ of *error coram nobis* to vacate the affirmation of his conviction on the grounds of ineffective assistance of appellate counsel. In an order dated September 18, 2007, the Appellate Division denied this application. *People v. Martin*, 841 N.Y.S.2d 458 (App. Div. 2007). Petitioner then sought leave to appeal to the Court of Appeals, which also was denied. *People v. Martin*, 9 N.Y.3d 1007 (N.Y. 2007).

On January 27, 2008, petitioner filed the instant habeas corpus petition with this Court. Respondent filed its opposition on March 10, 2008. This matter is fully submitted.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

4

incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

#### A. Procedurally Barred Claims

For the reasons set forth below, the Court concludes that petitioner's claims regarding medical evidence and prosecutorial misconduct are procedurally barred from review.[2]

#### 1. Legal Standard

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were

---

[2] As discussed *infra*, petitioner's weight of the evidence claim does not present a federal issue and, therefore, is also not reviewable by this Court. However, in an abundance of caution, the Court has construed the claim as a "sufficiency claim" under federal law and concludes that it is not exhausted and, in any event, must be denied on the merits for the reasons discussed *infra*.

5

omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Thus, the claims underlying a habeas petition may be procedurally barred from review if they were decided by the state courts on adequate and independent procedural grounds. *Id.* at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

In particular, the procedural bar applies when a state court's decision contains a "plain statement" that it is relying on an appropriate state law to deny a claim. *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). The Supreme Court has consistently applied the *Long* rule since it was established. *See Harris v. Reed*, 489 U.S. 255, 261 (1989); *see also Ohio v. Robinette*, 519 U.S. 33, 37 (1996); *Pennsylvania v. Labron*, 518 U.S. 938, 941 (1996); *Arizona v. Evans*, 514 U.S. 1, 7 (1995); *Coleman*, 501 U.S. at 723; *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The rule applies both to substantive and procedural state laws. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (applying the *Long* "plain statement" rule to a procedural state law). Further, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id.*

Once it is determined that a claim is procedurally barred, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-50 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

2. Application

1. Medical Evidence Claim

At trial, petitioner argued that he should be allowed to introduce the testimony of a doctor in order to show that he could not move quickly and, therefore, that M.M. could have escaped from the car if she were not there voluntarily. (T. 1228-30.) On direct appeal, petitioner argued, as he does in the instant petition, that the medical evidence would have shown that he could not have forcibly sodomized and raped M.M.; petitioner also argued that the evidentiary ruling violated his constitutional rights. (*See* Appellant's Br. at 39-44; Petition at 6.) The Appellate Division rejected petitioner's contention as unpreserved because his "arguments on appeal are different from those advanced before the trial court." *Martin*, 815 N.Y.S.2d at 105. The Appellate Division

cited *People v. Turriago*, 90 N.Y.2d 77, 83-84 (1997) and *People v. Young*, 745 N.Y.S.2d 177 (App. Div. 2002). Those cases reiterate the New York rule that an argument is unpreserved when not raised before the trial court. Thus, in disposing of petitioner's medical evidence claim, the Appellate Division provided a plain statement that the claim was unpreserved for appellate review under established New York law. Therefore, this Court concludes that petitioner's medical evidence claim is barred from federal habeas review. *See, e.g.*, *Garbutt v. Conway*, No. 05 Civ. 9898(SHS), 2009 WL 2474099, at *2 (S.D.N.Y. Aug. 12, 2009) (holding that petitioner's sufficiency of the evidence claim was procedurally barred from habeas review where state appellate court found petitioner's argument unpreserved because it was different from the sufficiency of the evidence argument raised at trial).

However, even when a claim is procedurally barred, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (citations omitted). Here, petitioner has provided no explanation for his failure to raise this argument to the trial court, nor has he demonstrated prejudice resulting therefrom or a miscarriage of justice. Accordingly, petitioner's claim is deemed exhausted, but is procedurally barred from review by this Court. In any event, as discussed *infra*, the claim is without merit.

2. Prosecutorial Misconduct

Petitioner's claim regarding allegedly improper summation comments is also barred from review. On petitioner's direct appeal, he argued that various comments by the prosecutor in summation denied petitioner a fair trial. Petitioner conceded that the challenged comments were not objected to at trial and, therefore, that the alleged errors were not preserved for review. (Appellant's Br. at 48.) The Appellate Division ruled that petitioner's "contention that the prosecutor committed misconduct in summation is unpreserved for appellate review." *Martin*, 815 N.Y.S.2d at 105 (citing *People v. Lavalle*, 3 N.Y.3d 88, 114 (2004) and *People v. Harris*, 98 N.Y.2d 452, 459 (2002)). In *Harris*, the New York Court of Appeals rejected defendant's contention as unpreserved where it was based on alleged improper comments during summation and where "[d]efendant did not object to many of the specific comments during the summation and the few objections defendant did raise were all of a general nature . . . ." 98 N.Y.2d at 491 n.18. In this case, therefore, the Appellate Division relied on an independent and adequate state procedural ground in denying petitioner's appeal. Petitioner has provided no explanation for the default, nor has he demonstrated prejudice resulting therefrom or a miscarriage of justice. Therefore, the Court concludes that petitioner's claim is barred from review. In any event, as discussed *infra*, petitioner's claim is without merit.

B. Review on the Merits

As set forth below, the Court concludes that all of petitioner's claims are without merit and, therefore, the petition is denied in its entirety.

A. Weight of the Evidence

Petitioner's first claim is that his conviction in state court was against the

weight of the evidence. However, it is well established that a "weight of the evidence" claim is based on state law. *See, e.g.*, *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The Court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). Therefore, to the extent petitioner raises a weight of the evidence claim under state law, the Court cannot review it.[3]

In an abundance of caution, however, the Court will construe the petition as raising a federal claim that the evidence was insufficient to support the conviction,[4] which does present a question of federal law. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that the Fourteenth Amendment requires "sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law" (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979))). As discussed below, any claim that the evidence at petitioner's trial was insufficient to support a finding of guilt beyond a reasonable doubt is without merit.

1. Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler*, 109 F.3d at 840. As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04-CV-0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d

---

[3] The Court notes that the Appellate Division rejected this claim on the merits, holding that "[u]pon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." *Martin*, 815 N.Y.S.2d at 105 (internal citation omitted).

[4] Of course, to the extent petitioner raises a federal insufficiency of the evidence claim in the instant petition, such a claim is barred from review because petitioner did not exhaust this claim in state court. On his state court appeal, petitioner asserted only a weight of the evidence claim, which is a distinct claim. *See People v. Bleakley*, 508 N.E.2d 672, 674 (N.Y. 1987) (acknowledging that each doctrine "requires a discrete analysis"). Thus, because petitioner did not raise this federal claim in state court, he has failed to exhaust it. Petitioner has not demonstrated cause for the default or prejudice resulting therefrom, nor a miscarriage of justice, and, therefore, petitioner's sufficiency of the evidence claim is procedurally barred. In any event, as discussed *infra*, any such claim lacks merit.

172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

2. Application

For the reasons set forth below, the Court concludes that the evidence at trial was sufficient to convict petitioner of the charged crimes beyond a reasonable doubt.

a. May 21, 2000 Incident

In connection with the May 21, 2000 incident, petitioner was convicted of kidnapping and sodomy. Under New York Penal Law § 135.20, "[a] person is guilty of kidnapping in the second degree when he abducts another person." Under New York Penal Law § 130.50[1], "[a] person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person . . . [b]y forcible compulsion."[5] In this case, W.H. identified petitioner as her attacker and testified that he forced her into his car, threatened her with a gun, and forced her to engage in oral sexual conduct. (T. 309-21, 369.) This evidence was clearly sufficient for a conviction of the charged crimes.

Petitioner argues that W.H.'s identification of petitioner "leaves a great deal to be desired." (Petition at 5.) Specifically, petitioner argues that W.H. described her attacker immediately after the May 21, 2000 incident as being 6'1" and 180 pounds, whereas petitioner is, in fact, 6'7" and weighs 300 pounds. (*Id.* at 5-6.) Petitioner also argues that there was no physical evidence connecting him to the attack on W.H. (*Id.* at 6.)

As a threshold matter, to the extent petitioner suggests that the evidence must be insufficient because he was identified only by one eyewitness, the Court finds that argument

---

[5] The statute was amended in 2003 to substitute, *inter alia*, "criminal sexual act" for "sodomy" and "oral sexual conduct" for "deviate sexual intercourse." In any event, under the earlier version of the statute, "deviate sexual intercourse" was defined to include oral sexual conduct. *See, e.g.*, *People v. Ogborn*, 865 N.Y.S.2d 746, 747 (App. Div. 2008).

9

unpersuasive. The Second Circuit has emphasized that "the testimony of a single, uncorroborated eyewitness is generally sufficient to support conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979), *cert. denied*, 441 U.S. 951 (1979); *see also Bentley v. Scully*, 41 F.3d 818, 825 (2d Cir. 1994) (stating that eyewitness testimony and identification constituted a major portion of overwhelming evidence of guilt); *see also King v. Greiner*, 210 F. Supp. 2d 177, 185 (E.D.N.Y. 2002) (holding that a petitioner's claim of legally insufficient evidence lacked merit in light of eyewitness identification); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (holding that the testimony of one eyewitness defeated a petitioner's claim of legally insufficient evidence). Furthermore, there was, in fact, physical evidence linking petitioner to the crime — his fingerprint was found on the payphone at the scene of the attack. (T. 240-46, 523-24.)

Second, petitioner's attack on the credibility of W.H. as a witness does not warrant habeas relief. It is well established that a habeas court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Thus, a federal habeas court must "resolve all issues of credibility[] in favor of the jury's verdict." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998); *see also Copeland v. Walker*, 258 F. Supp. 2d 105, 120 (E.D.N.Y. 2003) ("[C]redibility determinations are exclusively the domain of the trier of fact."); *Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[F]ederal habeas courts 'are not free to reassess the [fact-specific] credibility judgments by juries or to weigh conflicting testimony. . . . [A federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution.'" (quoting *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996))); *accord Anderson v. Senkowski*, No. CV-92-1007 (CPS), 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993). Moreover, this rule applies to credibility determinations made by juries with respect to identification testimony. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) ("'The reliability of properly admitted eyewitness identification, like the credibility of other parts of the prosecution's case is a matter for the jury.'" (quoting *Foster v. California*, 394 U.S. 440, 442 n.2 (1969))).

Petitioner's trial counsel cross-examined W.H. about any inconsistencies in her testimony, including her description of petitioner. (T. 388-93.) Petitioner's counsel argued to the jury that the inconsistencies rendered her testimony not believable. (*Id.* at 1407-08, 1417.) The government argued in response that petitioner's height and weight description of petitioner to police was "more or less" (*id.* at 390-92), and that W.H. used a different form of measurement in her home country (*id.* at 348-49). It is well established that any such inconsistencies "were for the jury to decide." *See Quartaro*, 186 F.3d at 96. Under these circumstances, there is no basis to disturb the jury's finding. *See, e.g.*, *United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983) ("With respect to identification evidence, the Due Process Clause protects solely an evidentiary interest . . . , an interest normally vindicated through the adversarial process of cross-examination. . . . The jury herein was advised of [the eyewitness's] inability to select defendant

from the photo spread and her failure to mention defendant's wrinkled face and balding condition when she described the bandit after the robbery. The admission of the in-court identification was not error." (internal quotation omitted)); *see also Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) ("[T]he jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses. . . . We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."); *Williams v. Bennet*, No. 97 CIV. 1628 (HB), 1998 WL 236222, at *5 (S.D.N.Y. Apr. 20, 1998) ("[Petitioner] relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim's] testimony, despite its inconsistencies, over [petitioner's] testimony, is fully supported by the record."); *accord Simpson v. Portuondo*, No. 01 CIV 1379 (BSJ) (AJP), 2001 WL 830946, at *8 (S.D.N.Y. July 12, 2001) (Report and Recommendation) (collecting cases). Therefore, petitioner's challenge to W.H.'s credibility does not support a claim of legal insufficiency in light of the Court's review of the entire record of this case.

### b. June 20, 2000 Incident

In connection with the June 20, 2000 incident, petitioner was convicted of kidnapping, sodomy, and rape. Under New York Penal Law § 130.35[1], "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [b]y forcible compulsion." In this case, M.M. testified that she was abducted, threatened with a gun (T. 695, 756, 759), and was forced to engage in oral sexual conduct and sexual intercourse. (*Id.* at 687-97.) DNA tests revealed that petitioner had engaged in sexual intercourse with M.M. (*Id.* at 1024-29.) Both M.M. and Torres identified petitioner's car as the car used in the attack. (*Id.* at 720-26, 838-40.) Accordingly, there was sufficient evidence to support petitioner's convictions for kidnapping, sodomy, and rape in connection with the June 20, 2000 incident.

Petitioner argues that M.M.'s testimony "lines up to the letter" with petitioner's own testimony that the two had engaged in consensual sex. (Petition at 6.) To the extent petitioner challenges M.M.'s credibility, the Court rejects that argument for the same reason it rejected petitioner's challenge to W.H.'s credibility. Petitioner testified that M.M. was a prostitute and that the sexual encounter was consensual (T. 1209, 1215-26), and his counsel made that argument to the jury (*id.* at 1423, 1428). Clearly, the jury rejected petitioner's argument and credited M.M.'s testimony. Thus, the Court rejects petitioner's claim regarding the sufficiency of the evidence on the June 20, 2000 incident. *See, e.g.*, *Blake v. Kirkpatrick*, No. 08 Civ. 9288(GEL), 2009 WL 536508, at *2 (S.D.N.Y. Mar. 4, 2009) ("The sexual encounter is corroborated by the DNA match (and [defendant's] own testimony) and if [the victim's] testimony . . . is accepted, the element of forcible compulsion, N.Y. Penal Law § 130.50(1), is also firmly established. Since, for purposes of evaluating the sufficiency of the evidence, all issues of credibility are presumed to have been resolved by the trier of fact in the prosecution's favor, *Jackson*, 443 U.S. at 326, the evidence was plainly sufficient to warrant the jury's verdict."); *Woods v. Lempke*, No. 08-CV-144,

2008 WL 5157286, at *7 (W.D.N.Y. Dec. 8, 2008) ("[T]he jury heard substantial testimony indicating that petitioner sexually assaulted the complainant. Apparently the jury chose to credit this testimony . . . .") (rejecting insufficiency of the evidence claim on habeas).

In sum, the Court concludes that the evidence was sufficient to convict petitioner beyond a reasonable doubt on all of the charged crimes. The Court, therefore, rejects petitioner's sufficiency of the evidence claim on the merits.

### B. Medical Evidence

Petitioner argues that testimony from a medical doctor regarding his hip condition was relevant to petitioner's argument that he was incapable of exerting the physical force necessary to subdue the victim, "at least in the way the victim described." (Petition at 6.) The Appellate Division rejected this claim on the merits, holding that "the trial court properly determined that the proposed medical testimony was collateral to any material issue and would be cumulative of other evidence of the defendant's physical limitations." *Martin*, 815 N.Y.S.2d at 105 (citing *People v. Aska*, 697 N.E.2d 172, 173 (1998)). Therefore, AEDPA deference applies. As set forth below, there is no basis to conclude that the trial court's evidentiary ruling was erroneous under state law, and there is certainly no showing that the ruling, even if erroneous, rose to a constitutional level that deprived petitioner of a fair trial. Thus, petitioner's claim does not warrant habeas relief.

### 1. Legal Standard

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant" (internal quotation marks omitted)). Moreover, the court "must review the erroneously admitted evidence 'in

light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d at 181 (internal quotation marks omitted)). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001). As set forth below, the Court has reviewed the trial court's evidentiary ruling to which petitioner objects under this two-part test and concludes that petitioner's claim lacks merit.

2. Application

As a threshold matter, there is no basis to conclude that the trial court's exclusion of the medical testimony at issue was erroneous under state law. As noted by the Appellate Division in affirming petitioner's conviction, "the trial court properly determined that the proposed medical testimony was collateral to any material issue and would be cumulative . . . ." *Martin*, 815 N.Y.S.2d at 105 (citing *People v. Aska*, 697 N.E.2d 172, 173 (1998)). Under New York law,

> the determination that proffered evidence addresses material or collateral issues in a case is made only after examining the particular circumstances of each case. As a general rule, the trial court is granted broad discretion in making evidentiary rulings precluding or admitting such evidence and, absent an abuse of discretion, a trial court's decision should not be disturbed on appeal.

*Aska*, 697 N.E.2d at 173 (citation omitted). As a threshold matter, it is a matter of speculation what testimony the doctor might have offered. Petitioner's counsel did not make an offer of proof and conceded that he would have to "get on the phone and find [out] who the doctor is." (T. 1230.) Furthermore, petitioner and two other witnesses testified about his hip condition and allegedly slow movement. (*Id.* at 1226-27, 1077, 1116-20.) Petitioner also was allowed to show his surgical scars to the jury. (*Id.* at 1235-36.) Given the broad discretion afforded the trial court under New York law, the Court concludes that the trial court did not err in ruling that the additional evidence on this point was collateral or cumulative.[6]

Finally, even if the challenged evidentiary ruling were erroneous under state law, there is no basis for the Court to conclude, based on the whole record, that the ruling deprived

---

[6] The state court's ruling is also generally consistent with Rule 403 of the Federal Rules of Evidence, which provides that: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see, e.g.*, *Sussman v. N.Y.C. Health & Hosp. Corp.*, 47 F. App'x 19, 22 (2d Cir. 2002) ("[Plaintiff] further argues that the district court erred in not allowing him to introduce certain evidence about his disabilities. The record shows, however, that he was permitted to introduce a significant amount of evidence about his disabilities. . . . Under F.R.E. 403, a decision regarding the probative value of cumulative evidence is reviewed only for abuse of discretion."); *see also United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) ("Absent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence." (citations omitted)).

petitioner of his constitutional right to a fair trial. *See Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) ("Whether the exclusion of [the witnesses'] testimony violated [defendant's] right to present a defense depends upon whether 'the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist.'" (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)) (internal alterations omitted)); *see also Wade v. Montello*, 333 F.3d 51, 59 (2d Cir. 2003) (holding that the test set forth in *Justice v. Hoke* applies post-AEDPA). Even assuming *arguendo* that petitioner called a medical doctor to the stand who testified that petitioner moved slowly due to a hip condition, such evidence would not have created a reasonable doubt because of the overwhelming evidence that petitioner had the capability, and was responsible, for the sexual assaults on W.H. and M.M. For instance, in addition to the testimony of the victims, there was evidence that petitioner had played college basketball and had played basketball as recently as May 21, 2000 — which was the day of the attack on W.H. (T. 1128, 1187.) Furthermore, even if the jury believed that petitioner moved slowly due to a hip condition, both victims testified that they were threatened with a gun, which satisfies the element of forcible compulsion. *See* N.Y. Penal Law § 130.00. Moreover, as noted *supra*, both petitioner and his witnesses testified about the alleged disability (and the jury saw petitioner's scars). Therefore, there is no basis to conclude that the doctor's testimony confirming a hip condition would have impacted the outcome of the trial. Thus, in light of the entire record in this case, the Court concludes that there is nothing about the challenged evidentiary ruling, even if erroneous, that rendered petitioner's trial unfair. *See, e.g.*, *Attawwab v. Gurdich*, No. 04-CV-3889(DLI), 2007 WL 2120405, at *8-10 (E.D.N.Y. July 23, 2007) (denying habeas petition and finding no due process violation where state court excluded medical records because no foundation was laid and there was potential for jury confusion); *Welch v. Artus*, No. 04-CV-205S, 2007 WL 949652, at *47-48 (W.D.N.Y. Mar. 29, 2007) ("This evidence was neither relevant nor probative to the issues in this case, and the trial judge was well within his discretion to preclude [petitioner] from introducing the medical record.") (denying habeas); *Herrara v. Lacy*, No. CV-94-0125(CPS), 1995 WL 669675, at *6-7 (E.D.N.Y. Nov. 5, 1995) (denying habeas petition and finding no due process violation where excluded medical evidence was not "overwhelmingly compelling" given changes in petitioner's medical condition).

In sum, the state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Thus, petitioner's request for a writ of habeas corpus based on the state court's evidentiary ruling is denied.

C. Improper Summation Comments

Finally, petitioner argues that he was denied due process and a fair trial because, during summation, the prosecutor used "inflammatory language which appeal[ed] to the sympathies and fears of the jury . . . ." (Petition at 6-7.) Petitioner objects to several statements in particular: (1) the prosecutor described the evidence at trial as a "haunting account" and described the victims as "two young women," "Latino," and "law abiding citizens" (*see* T. 1440); (2) the prosecutor stated that the alleged conduct was "unspeakable" (*id.*) and remarked that the victims were "crying out for justice in this case" (*id.* at 1441); and (3) the prosecutor observed that the victims were shaking with

14

fear (*id.* at 1448). Petitioner challenged these and other prosecutorial comments on direct appeal, and the Appellate Division rejected the claim on the merits.[7] *Martin*, 815 N.Y.S.2d at 105 (holding that the challenged comments "were within the broad scope of permissible rhetoric in summation, and were a fair response to defense counsel's summation, which explicitly placed the victims' credibility in issue"). Therefore, AEDPA deference applies. For the reasons set forth below, the Court concludes that the Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court rejects petitioner's claim on the merits.

For a claim of prosecutorial misconduct to establish a basis for habeas relief, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation and citation omitted). "There must, instead, be a showing that [petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Alexander v. Phillips*, 02 Civ. 8735(SAS)(FM), 2006 U.S. Dist. LEXIS 8926, at *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz*, 152, F. App'x 45, 46-47 (2d Cir. 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Darden*, 477 U.S. at 181) (citations omitted))); *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct.'" (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974))). "To determine prejudice, the following factors must be considered '(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct.'" *Alexander*, 2006 U.S. Dist. LEXIS 8926, at *41 (quoting *Bentley*, 41 F.3d at 824). Moreover, "[w]hen analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley*, No. 03 Civ. 8580 (DLC), 2006 WL 298214, at *2 (S.D.N.Y. Feb. 8, 2006) (citing *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004)).

As the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995). Numerous courts have found that comments analogous to those which petitioner challenges are admissible commentaries on the evidence. *See, e.g.*, *United States v. Pirro*, 9 F. App'x 45, 51 (2d Cir. 2001) ("[T]he prosecutor's argument to the jury that 'justice demands' a conviction was perfectly legitimate."); *Coble v. Quarterman*, 496 F.3d 430, 438 (5th Cir. 2007) (rejecting claim on habeas that trial counsel was ineffective for failing to object to prosecutor's comments during closing arguments describing petitioner as "a cold-blooded, merciless, remorseless killer"); *Pena v. Scott*, 33 F.3d 1378, No. 94-10140, 1994 WL 486961, at *5 (5th Cir. Aug. 10, 1994) (unpublished opinion) ("The prosecutor did refer to the killing as being cold-blooded and

---

[7] As discussed *supra*, petitioner did not object to any of these statements at trial.

did say that Pena should not be allowed to 'roam the streets again, killing at random.' A prosecutor may make a metaphorical comment on the evidence."); *United States v. Pungitore*, 910 F.2d 1084, 1127 (3d Cir. 1990) (concluding that prosecutor's reference to defendant as a "cold-blooded murderer" and other defendants as "mob killers" were fair comments on the evidence adduced at trial); *United States v. Taxe*, 540 F.2d 961, 967-68 (9th Cir. 1976) (concluding that prosecutor's characterizations of defendant as a "scavenger," "parasite," "fraud," and "professional con-man," supported by evidence and not prejudicial); *Paul v. Kelly*, No. CV 90-1654 (RR), 1991 WL 49774, at *6 (E.D.N.Y. Mar. 26, 1991) ("The prosecutor's characterization of the criminal conduct engaged in as 'cold blooded,' was fair commentary on the evidence adduced.").

In any event, even assuming *arguendo* that these or other comments by the prosecutor were improper, they were not severe or egregious and certainly did not render the trial so unfair as to deprive petitioner of his due process rights. Within the lengthy summation that involved an analysis of the trial evidence, the challenged comments did not play a substantial role in the summation, much less the entirety of the trial. *See, e.g.*, *Miller*, 2006 WL 298214, at *3 ("The prosecutor's statements were brief and not a significant part of the State's argument or summation."). Taken as a whole, the summation properly focused the jury on the evidence, and the use of these or other colorful adjectives and phrases by the prosecutor did not render the trial fundamentally unfair. Moreover, given the overwhelming evidence of guilt, as discussed *supra*, even if the comments were improper, they would not warrant habeas relief because they clearly did not have a substantial or injurious effect or influence on the jury's verdict. *See, e.g.*, *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000) ("Although this court does not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision, it is likely the nature of the crime itself produced sympathy before the prosecutor made any comments. . . . The prosecutor's appeals to emotion were not sufficient to render the trial fundamentally unfair."); *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (holding that prosecutor's comments, including that victim was virtuous and that the community cried out for "safer streets," while improper, did not render trial fundamentally unfair in light of the court's instructions and the strength of the prosecution's case); *Gilchrist* v. *Hagan*, C/A No. 6:06-1236-MBS, 2007 WL 951749, at *27 (D.S.C. Mar. 27, 2007) (Report & Recommendation adopted by District Court) ("[T]he prosecutor's comments that the petitioner had just killed 'a defenseless man, and he had to come up with some alternative version of reality,' as well as the reference to the petitioner having 'nine hours between cold-bloodedly killing this man here and turning himself in . . . to create the fiction you all heard from him yesterday,' . . . were merely an appropriate argument that the petitioner was guilty of murder and his testimony . . . , as well as that of his other witnesses, was not credible" (citations omitted)); *see also United States v. Wiley*, 29 F.3d 345, 351 (8th Cir. 1994) ("We conclude that the prosecutor's characterization of [the defendant] as a 'criminal' and 'drug dealer,' although arguably improper, did not deprive [the defendant] of a fair trial." (collecting cases)); *Corbett v. Mintzes*, No. 84-1021, 1985 WL 13562, at *2 (6th Cir. Aug. 7, 1985) ("The statements that [petitioner] was a mean, vindictive, col[d]-blooded person and that he was looking for an excuse to attack [the

16

victim] while possibly improper were not so egregious to constitute a deprivation of [petitioner's] right to due process. We therefore find that the comments do not warrant habeas relief."); *Lizardi v. Ercole*, No. 06 CV 2848(JG), 2007 WL 534528, at *2, 5 (E.D.N.Y. Feb. 15, 2007) (holding that prosecutor's comments, including that victims were subjected to "unspeakable terror" did not rise to the level of a due process violation); *Williams v. Donnelly*, Nos. 00-CV-4445(DGT), 00-CV-4447(DGT), 00-CV-4448(DGT), 2005 WL 2290592, at *12-13 (E.D.N.Y. Apr. 12, 2005) (holding that prosecutor's comment that victim was a "hard working man, who was trying to live the American dream," even if improper, did not warrant habeas relief); *Toro v. Herbert*, Nos. 01-CV-3386 (JBW), 03-MISC-0066 (JBW), 2003 WL 22992059, at *6 (E.D.N.Y. Sept. 29, 2003) (where prosecutor, among other things, referred to defendant as a cold-blooded murderer during summation, "none of the prosecutor's remarks was sufficiently egregious – whether in isolation or when accumulated – to have denied petitioner a fair trial").

In short, the Appellate Division's rejection of petitioner's prosecutorial misconduct claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Because the challenged statements by the prosecutor did not deprive petitioner of a fair trial, petitioner's request for a writ of habeas corpus on this ground is denied on the merits.[8]

---

[8] To the extent petitioner argues that the prosecutor's reference to the victims' ethnicity denied him a fair trial, the Court rejects that argument. Reference to a victim's race is not inherently improper. *See Dawkins v. Artuz*, 152 F. App'x 45, 46-47 (2d Cir. 2005) (denying habeas petition and holding that prosecutor's reference to

\*\*\*

In sum, having carefully examined the merits of all of petitioner's claims, the Court concludes that petitioner has failed to demonstrate that any state court ruling was contrary to, or was an unreasonable application of, clearly established federal law, or that any state court decision was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In short, the Court concludes that all of petitioner's claims lack merit.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28

---

distinction in defendant's and victim's ethnicity was "offered to provide a motive for the crime and not to suggest guilt by national association"). In this case, the fact that W.H. did not speak English and used a different form of measurement in her home county played a key role. (*See, e.g.*, T. 1446-47, 1452.) In any event, even if the prosecutor's reference to the victims' Latino ethnicity was improper, it was not so egregious as to deny petitioner a fair trial. The prosecutor only made reference to this fact once in introducing the victims.

The Court also rejects any challenge to the prosecutor's description of the victims' emotional state. Petitioner made an issue of the victims' credibility. The prosecutor described W.H.'s shaking in the context of responding to petitioner's argument attacking her eyewitness identification, stating that W.H. "says the fear came right back" when she saw petitioner and identified him before trial. (T. 1448.) Furthermore, even if improper, any such brief reference to the victims' emotional state did not render the trial unfair. *See, e.g.*, *Velazquez v. Poole*, 614 F. Supp. 2d 284, 321 (E.D.N.Y. 2007).

17

U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 29, 2010
Central Islip, New York

Petitioner is proceeding *pro se*. Attorney for respondent is Kathleen M. Rice, District Attorney, Nassau County, by Tammy J. Smiley and Ilisa T. Fleischer, Assistant District Attorneys, 262 Old Country Rd., Mineola, NY 11501.